UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BLACKBIRD TECNHOLOGIES, INC., <br> Plaintiff, <br> v. <br> PRATEEK JOSHI, <br> Defendant. | Case No. 5:15-cv-04272-EJD <br><br> **MEMORANDUM AND ORDER RE: PRELIMINARY INJUNCTION** |

After granting Plaintiff Blackbird Technologies, Inc.'s ("Blackbird") ex parte motion for the extension of a pre-removal temporary restraining order ("TRO") on September 22, 2015, the court ordered Defendant Prateek Joshi ("Defendant") to show cause why a preliminary injunction should not issue. See Docket Item No. 15. Defendant filed a return to the order to show cause on September 28, 2015, opposing the issuance of an injunction. See Docket Item No. 28.

Defendant asserts jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.[1] Having considered the record in conjunction with parties' arguments presented at the hearing on October 6, 2015, the court has determined that Blackbird is entitled to preliminary injunctive relief. Accordingly, such an order will issue consistent with the discussion below.

---

[1] Defendant suggested at the hearing that this court could not proceed to issue an injunction because Blackbird intends to file a motion to remand. But Defendant cannot use federal subject matter jurisdiction as both a sword and a shield, arguing it exists when it serves his interest and arguing it does not when its existence may result in consequences adverse to him. In any event, the court is satisfied it has inherent authority to issue orders necessary to preserve the status quo that existed prior to removal, including a preliminary injunction. See Coen Co. v. Pan Int'l, Ltd., No. 14-cv-03392-JST, 2014 U.S. Dist. LEXIS 110027, at *12, 2014 WL 3924636 (N.D. Cal. Aug. 8, 2014).

1
Case No.: 5:15-cv-04272-EJD
MEMORANDUM AND ORDER RE: PRELIMINARY INJUNCTION

## I. BACKGROUND

### A. Factual Background

Blackbird was founded in 2013 by Majunath Rajashekhar and Nikhil Raghavan and provides visual semantic search, recommendation, personalization, and analytics for ecommerce companies. See Compl., at ¶¶ 2, 13. According to the Complaint, Blackbird "has come up with a solution in perhaps the most competitive market in the modern economy: ecommerce search." Id. at ¶ 2. This "solution" enables a business selling products over the internet to provide its customers with results that pertain to a precise search query. Id. "For example, if the user searches for white shoes with black heels, that is exactly what comes back (not white shoes with black high heels)." Id. In other words, "Blackbird's technology is aimed at returning only exactly what you searched for . . . ." Id. at ¶ 15.

Blackbird and its employees spent more than two years developing its search software. Id. Because it results in an increase of user searches that result in actual sales, Blackbird alleges it has attracted millions of dollars in funding and has customers paying six-figure annual licensing fees to Blackbird for the use of its technology. Id. at ¶¶ 2, 15.

Defendant was a software engineer at Blackbird from approximately June, 2014, until February 28, 2015. Id. at ¶¶ 3, 17. Defendant was hired to work on "computer vision engineering," which involves the process of image recognition and sorting, and became intimately familiar with Blackbird's technology and business plans. Id. at ¶¶ 3, 18. He was paid a salary and reported directly to the Rajashekhar, the Chief Technology Officer. Id. at ¶ 3.

During Defendant's employment, Blackbird alleges it was operating in "stealth mode," which refers to an early period when only employees, investors and customers know about the company's technology. Id. at ¶ 16. Indeed, Blackbird alleges it presented its technology to only one customer during that time. Id. at ¶ 18. To protect the secrecy of its technology, employees like Defendant were required to execute a Proprietary and Invention Agreement ("PIIA") which states, in pertinent part:

> I agree that during the term of employment with Company (whether or not during business hours), I will not engage in any activity that is

2
Case No.: 5:15-cv-04272-EJD
MEMORANDUM AND ORDER RE: PRELIMINARY INJUNCTION

> in any way competitive with the business or demonstrably anticipated business of Company, and I will not assist any other person or organization in competing or in preparing to compete with any business or demonstrably anticipated business of the Company.
>
> Company shall own all right, title and interest . . . relating to any and all inventions (whether or nor patentable), works of authorship, mask works, designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, by me during the term of my employment with the Company to and only to the fullest extent allowed by California Labor Code Section 2870 . . . and I will promptly disclose all Inventions to Company.
>
> I agree that all Inventions and all other business, technical and financial information . . . I develop, learn or obtain during the term of employment that relate to Company or the business or demonstrably anticipated business of Company or that are received by or for Company in confidence, constitute "Proprietary Information." I will hold in confidence and not disclose or, except within the scope of my employment, use any Proprietary Information.
>
> I agree that my obligations under Paragraphs 2, 3, 4 and 5 of this Agreement shall continue in effect after termination of my employment, regardless of the reason or reasons for termination . . . .
>
> I also understand that any breach of this Agreement will cause irreparable harm to Company, for which damages would not be an adequate remedy, and, therefore, Company will not be entitled to injunctive relief with respect thereto in addition to any other remedies and without any requirement to post bond.

Id. at ¶ 19.

Blackbird alleges that, notwithstanding the obligations imposed by the PIIA, Defendant prepared to form a competing business while still employed at Blackbird. Id. at ¶ 20.

According to Blackbird, Defendant originally called this project "Deep Lambda," and registered the domain name www.deeplambda.com on September 20, 2014. Id. at ¶ 21. Then, on November 20, 2014, Defendant uploaded a video with a "Deep Lambda" logo to YouTube, which Blackbird alleges "disclosed exactly what he was working on at Blackbird." Id. at ¶ 22. "[T]he examples Defendant used in the video were almost word-for-word the same as the examples that Blackbird used in the only demonstration it had done for a customer." Id. "For example, Blackbird's presentation used the example of searching for 'white shoes with black heels,' . . . . Defendant's video used the example of searching for 'white shoes with black lace,' . . . ." Id.

3

Case No.: 5:15-cv-04272-EJD
MEMORANDUM AND ORDER RE: PRELIMINARY INJUNCTION

Blackbird believes the video leaves the impression that Defendant created the technology instead of Blackbird, but Defendant was not familiar with Blackbird's technology when he joined the company in June or July, 2014,[2] and was not familiar with all of Blackbird's source code. Id. at ¶ 23. Defendant never disclosed the "Deep Lambda" project while employed at Blackbird. Id. at ¶ 24.

In January, 2015, Blackbird informed Defendant his services were no longer needed because his work was not meeting expectations. Id. at ¶ 25. In response, Defendant asked if he could remain a Blackbird employee for an additional two months so that he could address immigration issues. Id. at ¶ 26. Blackbird agreed and permitted Defendant to remain employed. Id.

At the eventual conclusion of his employment, Defendant and Blackbird entered into a severance agreement pursuant to which Defendant agreed to be bound by the PIIA and all of Blackbird's policies and procedures. Id. at ¶ 27. He also represented that he would return all property belonging to the company and released all claims against Blackbird. Id. Blackbird, in turn, released claims against Defendant, but did so without knowledge of Defendant's involvement with the "Deep Lambda" project. Id.

Blackbird alleges that subsequent to leaving, Defendant created a "URL redirect" from www.deeplambda.com to www.plutosearch.com, which is a website that purports to offer search technology "that is exactly the same as that offered by Blackbird." Id. at ¶ 29.

### B. Procedural History

Blackbird initiated this action in Santa Clara County Superior Court on August 26, 2015, asserting three causes of action against Defendant: (1) breach of contract, (2) breach of duty of loyalty, and (3) fraud. It moved ex parte for a TRO on August 27, 2015. That same day, the Superior Court issued a TRO and scheduled a preliminary injunction hearing for September 17, 2015. The Superior Court also ordered expedited discovery, including Defendant's deposition,

---

[2] Blackbird alleges in paragraph 17 of the Complaint that Defendant began employment in June, 2014, but alleges in paragraph 23 that Defendant joined the company in July, 2014.

and required Defendant to produce source code to a third party expert.

On September 4, 2015, Blackbird moved ex parte for an order requiring Defendant to comply with certain aspects of the TRO. In particular, Blackbird sought an order requiring Defendant to produce source code related to Deep Lambda and PlutoSearch and to produce "responsive documents." In response, Defendant requested "clarification" of the TRO based primarily on Defendant's contention that the case involved trade secrets. The Superior Court granted Blackbird's ex parte request and continued the injunction hearing to September 22, 2015. It denied Defendant's request for clarification.

On September 11, 2015, Blackbird again moved ex parte for an order enforcing the TRO. Although Defendant had since produced some source code, he claimed he could not produce source code related to PlutoSearch because he had assigned the code to a company, namely Pluto AI, Inc. ("Pluto AI"). Defendant had also noticed depositions which the Superior Court had previously declined to permit. That same day, Pluto AI moved ex parte for the following relief: (1) an order requiring Blackbird to post a bond or undertaking, (2) an order shortening the time for a hearing on a motion for protective order and for sanctions, and (3) an order staying Defendant's deposition pending a ruling on the protective order request.

The Superior Court granted Blackbird's ex parte request and ordered Defendant to produce the PlutoSearch source code by 5:00 p.m. on September 11, 2015. As to Pluto AI's requests, the Superior Court granted the request for an order shortening time and set the hearing on the motion for protective order for September 22, 2015, to coincide with the injunction hearing. The Superior Court denied the other requests.

On Friday, September 18, 2015, Defendant removed the action to this court, citing federal question jurisdiction. According to Defendant, Blackbird's state-law claims arise under the Copyright Act, 17 U.S.C. § 101 et seq.

On Monday, September 22, 2015, Blackbird moved ex parte in federal court for an extension of the TRO issued by the Superior Court. This court granted that request and scheduled an order to show cause for October 6, 2015. Defendant then moved to vacate the TRO and for

5

Case No.: 5:15-cv-04272-EJD
MEMORANDUM AND ORDER RE: PRELIMINARY INJUNCTION

order imposing an undertaking or bond requirement. The court denied that motion on September 29, 2015, and issued an amended TRO on September 30, 2015.

## II. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). "To obtain a preliminary injunction, the moving party 'must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.'" Idaho v. Coeur D'Alene Tribe, 794 F.3d 1039, 1046 (9th Cir. 2015) (quoting Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1124 (9th Cir. 2014)). Moreover, "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011). This articulation represents "one alternative on a continuum" under the "'sliding scale' approach to preliminary injunctions employed" by the Ninth Circuit. Id. at 1131-32.

## III. DISCUSSION

### A. Success on the Merits

Blackbird argues it is likely to succeed on the merits of its breach of duty of loyalty and breach of contract claims. Because Blackbird has demonstrated a strong likelihood of prevailing on its breach of duty of loyalty claim, the court examines only that claim below.

"The elements of a cause of action for breach of a duty of loyalty, by analogy to a claim for breach of fiduciary duty, are as follows: (1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." Houng Que, Inc. v. Luu, 150 Cal. App. 4th 400, 410 (2007).

Blackbird convincingly establishes the requisite elements. First, Blackbird has shown that Defendant owed Blackbird a duty of loyalty under California law while he was an employee of the

6
Case No.: 5:15-cv-04272-EJD
MEMORANDUM AND ORDER RE: PRELIMINARY INJUNCTION

company from June or July, 2014, to February, 2015.  See id. at 414 ("[E]mployees are deemed agents for present purposes even if they are employed in a wholly nonrepresentative capacity . . . .Thus an employee, while employed, owed undivided loyalty to his employer."); see also Fowler v. Varian Assocs., 196 Cal. App. 3d 34, 41 (1987) ("During the term of employment, an employer is entitled to its employees' 'undivided loyalty.'").

Second, Blackbird has shown that Defendant breached his duty of loyalty.  "The duty of loyalty is breached, and the breach 'may give rise to a cause of action in the employer, when the employee takes action which is inimical[3] to the best interests of the employer.'"  Hong Que, Inc., 150 Cal. App. 4th at 414 (quoting Stokes v. Dole Nut Co., 41 Cal. App. 4th 285, 295 (1995)). More specifically, an employee "has a duty to refrain from competing" with the employer "and from taking action on behalf of or otherwise assisting" the employer's competitors.  Id. at 416 (citing Restatement (Third) of Agency § 8.04 (2006)).  An employee must also observe the "duty not to acquire a material benefit from a third party in connection with transactions conducted or other actions taken on behalf of" the employer through the use of the employee's position, and may not use the employer's property or confidential information for the employee's "own purposes or those of a third party."  Id. (citing Restatement (Third) of Agency §§ 8.02, 805 (2006)).

Here, the record includes a declaration from Defendant filed in Superior Court in which he confirms many of the factual allegations asserted in the Complaint.  See Decl. of Joshua A. Lerner ("Lerner Decl."), Docket Item No. 6, at Ex. F.  As Blackbird alleges, Defendant uploaded a video to YouTube showcasing a version of ecommerce search technology.  Id. at ¶ 18.  The date upon which this video appeared on YouTube is important for two reasons; first, because Defendant was an employee of Blackbird in November, 2014, and second, because Defendant had only been working at Blackbird for approximately five months at that time.

---

[3] "Inimical" means "being adverse often by reason of hostility or malevolence," or "having the disposition of an enemy."  Merriam-Webster's Collegiate Dictionary, 643 (11th ed. 2003).

7
Case No.: 5:15-cv-04272-EJD
MEMORANDUM AND ORDER RE: PRELIMINARY INJUNCTION

Defendant also states that he and another individual, Sanil Ghatpande, began working on the "Deep Lamda" project in autumn, 2014, that he acquired the domain name on September 20, 2014, and that he incorporated the company "Deep Lambda, Inc." on January 21, 2015. Id. at Ex. F, ¶ 14. Deep Lambda then changed its name to "Pluto AI, Inc.," doing business as PlutoSearch, on August 27, 2015. Id.

Furthermore, the record also contains an interview of Defendant entitled "Founder Stories: Prateek Joshi, Pluto" that was posted on the website for "Unshackled"[4] on or about August 19, 2015. Id. at Ex. I. In response to the question "What does being part of Unshackled mean to you?", Defendant stated in pertinent part:

> I came to the United States as a student, and have been working on a H1B visa since graduating with my Masters. I had a full-time job and my visa wouldn't allow me to jump into this full time, so Sanil [Ghatpande] and I started working on Pluto during nights and weekends. . . .

Id.

Defendant further stated in response to the question "What makes Pluto different than other products?", that:

> Pluto has the unprecedented ability to understand the real intent of online shoppers. This is done by combining semantic and visual search and analyzing the contents of images to extract hidden images.

Id.

Additionally, Defendant admitted in the Superior Court declaration - after that court twice ordered him to produce a copy of the source code - that he had "discovered an archived version of Blackbird's code, on a USB drive" that was "apparently created during a routine back-up of the equipment" he was using, and which he did not "intentionally create." Id. at Ex. F, ¶ 12. Defendant's explanation of how he came into possession of Blackbird's source code notably, and directly, contradicts a statement by Raghavan, the company's Chief Executive Officer, that

---

[4] According to Defendant, he is currently an employee of Unshackled as a computer engineer. See Lerner Decl., at Ex. F, ¶ 13. "Unshackled is the angel fund that funded PlutoSearch." Id.

Blackbird's "source code repository does not routinely back up to anyone's computer or thumb drive." Id. at Ex. K, ¶ 3.

Moreover, Defendant's conduct since the commencement of this action is noteworthy. Initially, he resisted complying with the details of the TRO, including the expedited discovery order, requiring Blackbird to file two ex parte applications before the Superior Court. When Defendant finally produced source code, he produced only the Blackbird copy and did not produce PlutoSearch code, instead claiming he did not have access or possession to the code due to a resolution passed by Pluto AI's board of directors (which consists of only two individuals, Ghatpande and Defendant) on September 1, 2015. Id. at Ex. F, ¶ 29.

The preponderance of the evidence, when examined in its entirety, demonstrates that Defendant likely breached his duty of loyalty to Blackbird. Indeed, whether or not the PlutoSearch technology is an exact copy of Blackbird's technology and regardless of whether Defendant developed the technology on his own time using his own equipment, the facts show that Defendant took actions "inimical" to his former employer when he made significant progress toward organizing a competing business, in secret, while still a Blackbird employee. The evidence also strongly suggests that Defendant started this new venture using confidential and proprietary information he had obtained from Blackbird, given the date upon which the YouTube video appeared and his sudden discovery of Blackbird source code in his possession, as well as Defendant's ongoing circumvention of any order compelling the production of PlutoSearch code to a third party expert.

Although the court finds Defendant's arguments and his alternative narrative uncompelling and unpersuasive - at least for the purposes of determining whether an injunction should issue - one argument is worth addressing if only to demonstrate why it does not preclude a finding in Blackbird's favor. Defendant points out that "California law does permit an employee to seek other employment and even to make some 'preparations to compete' before resigning." Fowler, 196 Cal. App. 3d at 41. However, "California law does not authorize an employee to transfer his loyalty to a competitor." Id. The present record shows that Defendant's conduct more closely

9

Case No.: 5:15-cv-04272-EJD
MEMORANDUM AND ORDER RE: PRELIMINARY INJUNCTION

1  resembles the latter category rather than the former, such that Defendant preferred Pluto AI's
2  interests to that of Blackbird while he was employed there.

### B. Irreparable Harm

The court now examines whether Blackbird has adequately demonstrated that it is likely to suffer irreparable harm in the absence of preliminary injunctive relief. In doing so, the court is mindful that "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988). "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." Id. "Subjective apprehensions and unsupported predictions of revenue loss are not sufficient to satisfy a plaintiff's burden of demonstrating an immediate threat of irreparable harm." Id. at 675-76. Moreover, alleged harms that are ultimately compensable by a damages award are not sufficiently irreparable. L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir. 1980).

At the hearing, Blackbird tied irreparable injury to the loss of its source code to Defendant and Pluto AI. The record demonstrates that this injury has occurred and will continue to occur. Indeed, it is undisputed that Defendant left Blackbird with a copy of that company's code, and that this code somehow made its way into the PlutoSearch code. Moreover, the procedural record reveals that Defendant at the least has declined and, at the most, has refused, to turn over PlutoSearch source code so that Blackbird can confirm the extent of its similarly to Blackbird's code.

Although not the strongest showing on this factor, the court agrees with Blackbird that the loss of exclusivity in its property to a company which can then use it to advance a similar product competing in the same market is a form of actual and immediate injury. While it is true, as Defendant's counsel stated at the hearing, that damages in the form of royalties could ultimately compensate Blackbird for economic injury, there appears no valid reason why the court should permit that injury to continue by allowing Defendant to profit from a probable breach of his duty

10
Case No.: 5:15-cv-04272-EJD
MEMORANDUM AND ORDER RE: PRELIMINARY INJUNCTION

of loyalty. In the absence of injunctive relief, entanglement of Blackbird's code with Pluto AI's competing product will continue and Pluto AI will secure additional customers and funding using the entangled product. Blackbird's damages are rendered difficult to ascertain in that scenario. But that situation that can be alleviated through the order requested by Blackbird, which precludes Defendant's use of the code while the legal and factual issues are sorted out.

### C. Balance of Equities

The court now turns to whether the balance of equities tips in Blackbird's favor. "[W]hile cases frequently speak in the shorthand of considering the harm to the plaintiff if the injunction is denied and the harm to the defendant if the injunction is granted, the real issue in this regard is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is improperly granted or denied." Scotts Co. v. United Indus. Corp., 315 F.3d 264, 284 (4th Cir. 2002).

Blackbird's arguments on this issue are primarily based on the allegation that it will lose control of its proprietary source code if Defendant, who has now admitted to being in possession of a copy of the code, is permitted unfettered access to copy and use it. For his part, Defendant states that an injunction would hamper Pluto AI's ability to secure funding, which could result in the loss of the enterprise.

Having considered the parties' positions, the court finds that the equities tip sharply in Blackbird's favor. While the potential effect of an injunction on Defendant or on Pluto AI is considerable, the adverse effect to Blackbird in the absence of an injunction is far more considerable. Since the current factual record demonstrates that Defendant more likely than not breached his duty of loyalty and used Blackbird's technology to start a competing company, the equitable balance tips toward Blackbird.

### D. Public Interest

When an injunction will impact non-parties and has the potential to impact the public, the public interest is relevant. See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009). As noted, the court has considered that a preliminary injunction in favor of Blackbird could affect

11
Case No.: 5:15-cv-04272-EJD
MEMORANDUM AND ORDER RE: PRELIMINARY INJUNCTION

Pluto AI.[5]

The court has also considered the public policy cited by Defendant which favors employee mobility and uncompetitive litigation. They are unpersuasive, however, because the law in California equally seeks to discourage employees from betraying their employers. Public policy does not assist Defendant here.

### E. Balancing

Blackbird has a made a showing under all four Winter factors, two of which - likelihood of success on the merits and the balance of equities - weigh strongly in Blackbird's favor. After carefully balancing the competing interests on the injunction continuum, the court finds "serious questions" going to the merits coupled with a hardship balance that tips sharply in Blackbird's favor. Accordingly, a preliminary injunction will issue.

### F. Bond

Generally, "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). But mandatory language notwithstanding, "the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009). It may also decline to impose an undertaking upon the demonstration of a strong likelihood of success on the merits. Scherr v. Volpe, 466 F.2d 1027, 1035 (7th Cir. 1972).

Defendant has made two previous requests for the imposition of a $5 million bond based on his contention that this constitutes the value of Pluto AI. Defendant also claims that he could

---

[5] However, the court does not agree that the length of time the TRO has been in effect and its apparent negative effect on Pluto AI is a valid consideration. As the procedural record demonstrates, the only reason a TRO issued in federal court - after the Superior Court's TRO had been in place for approximately three weeks - was because Defendant chose to remove this case two days before the injunction hearing scheduled in Superior Court. If Defendant was truly concerned about the effect of injunctive relief on Pluto AI, he could have proceeded with the injunction hearing in Superior Court and made his arguments there.

12
Case No.: 5:15-cv-04272-EJD
MEMORANDUM AND ORDER RE: PRELIMINARY INJUNCTION

be fired from Pluto AI in the face of an injunction, or that Pluto AI could lose customers.

The court has considered Defendant's argument but finds a bond unwarranted under the circumstances. Defendant's articulation of harm is unpersuasive because neither the value of a non-party business nor Defendant's potential termination from Pluto AI - an unlikely even given his position on the board of that company - are realistic metrics. In addition, for the reasons already explained, Blackbird has demonstrated a strong likelihood that it will succeed on its breach of duty claim. Therefore, an injunction will issue without the requirement of an undertaking.

**IV.  ORDER**

Based on the foregoing, the court issues a preliminary injunction as follows:

1. Defendant, his employees, agents, and/or representatives, and any and all persons acting under his direction and control are restrained and enjoined from, directly or indirectly, without further order of the court or Blackbird's written consent:

    a. Deleting, destroying, or altering any documents or things (including electronically maintained information) originating from, belonging to, or visually depicting information belonging to Blackbird. This specifically includes but is not limited to copies (if any) of the following: (i) any of Blackbird's source code; and (ii) anything derived from, or containing information derived from, any information belonging to Blackbird.

    b. Using or disclosing any of Blackbird's Proprietary Information, which is defined as all Inventions[6] and all other business, technical and financial information (including, without

---

[6] "Inventions" is defined as all inventions (whether or not patentable), works of authorship, mask works, designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, by Defendant during the term of his employment with Blackbird to and only to the fullest extent allowed by California Labor Code § 2870, which provides:

> Application of provision providing that employee shall assign or offer to assign rights in invention to employer.
>
> (a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without

13
Case No.: 5:15-cv-04272-EJD
MEMORANDUM AND ORDER RE: PRELIMINARY INJUNCTION

limitation, the identity of and information related to customers or employees) that Defendant developed, learned or obtained during the term of his employment that relate to Blackbird or the business or demonstrably anticipated business of Blackbird or that are received by or for Blackbird in confidence.  This includes selling any services or products offered at www.plutosearch.com that incorporate or are based on Blackbird's Proprietary Information.

2. Defendant's request for an evidentiary hearing or to advance and consolidate the trial on the merits with the injunction hearing pursuant to Federal Rule of Civil Procedure 65(a)(2) is DENIED.

3. Blackbird's request for an order requiring Defendant to produce "software related to ecommerce search," construed as a request for expedited discovery, is REFERRED to the assigned magistrate judge.

**IT IS SO ORDERED.**

Dated:  October 6, 2015



EDWARD J. DAVILA
United States District Judge

---

using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2) Result from any work performed by the employee for his employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

14
Case No.: 5:15-cv-04272-EJD
MEMORANDUM AND ORDER RE: PRELIMINARY INJUNCTION